UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEROY MOORE, et al., <br>     Plaintiffs, <br>   v. <br> EQUITY RESIDENTIAL MANAGEMENT, L.L.C., <br>     Defendant. | Case No. 16-cv-07204-MEJ <br><br> **ORDER RE: MOTION TO DISMISS AMENDED COMPLAINT** <br><br> Re: Dkt. No. 30 |

## INTRODUCTION

Pending before the Court is Defendant Equity Residential Management, L.L.C.'s ("Defendant") Motion to Dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Dkt. No. 30. Plaintiffs Leroy Moore, Dominika Bednarska, Perlita Payne, Brett Estes, and Annamarie Hara (collectively, "Plaintiffs") filed an Opposition (Dkt. No. 32) and Defendant filed a Reply (Dkt. No. 33). The Court previously vacated the June 22, 2017 hearing. *See* Dkt. No. 34. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS IN PART** Defendant's Motion for the following reasons.

## BACKGROUND

Defendant owns and operates a building in Berkeley, California (the "Property") that contains at least five dwelling units, and is marketed as a "Mobility Impaired Living Enhancement Property." FAC (as corrected) ¶¶ 3, 11, Dkt. No. 31-1. Moore, Bednarska, Payne, and Estes are current residents of the Property. *Id.* ¶¶ 22(a)-(d). Moore uses a cane or walking stick for balance; he has difficulty managing stairs, and is dependent on using an elevator to get into and out of the Property. *Id.* ¶ 22(a). Bednarska uses a scooter and crutches to ambulate, and is dependent upon the elevator to get into and out of her dwelling unit. *Id.* ¶ 22(b). Payne is married

to Bednarska. *Id.* ¶ 22(c). Estes is a quadriplegic who is dependent upon the elevator to leave the Property. *Id.* ¶ 22(d). Hara is a former resident of the Property; she has difficulty walking and at times requires a cane or walker; she cannot negotiate stairs and was dependent upon elevator access. *Id.* ¶¶ 1, 22(e). Plaintiffs allege Defendant has failed to maintain the only elevator on the Property, such that it has "frequently malfunctioned to such a degree that i[t] had to be taken out of service." *Id.* ¶ 16. Specifically, in November 2015, the elevator was out for more than 10 days. *Id.* The elevator outages force Plaintiffs to choose between negotiating stairs "to their great embarrassment, discomfort and personal injury or, to be prisoners in their home while excluding disabled friends and family from visiting them." *Id.* ¶ 17.

Plaintiffs allege Defendant has failed to provide reasonable accommodations to them in connection with the elevator. When Defendant has relocated disabled tenants to hotels pending repair of the elevator, it has failed to ensure those accommodations were accessible. *Id.* ¶ 18. Defendant also has refused to provide advance notice of times during which the elevator would be out of commission, and failed to keep residents reasonably informed about the length of time the elevator would be out of service. *Id.* ¶ 19. Defendant also has failed to institute policies and procedures to maintain the elevator properly, and to accommodate disabled residents' needs while the elevator was out of service. *Id.* ¶ 20. Plaintiffs allege they have missed employment opportunities or work; have been forced to change or miss travel and social plans; and have experienced physical discomfort, anxiety, and/or depression as a result of the elevator being out of service. *Id.* ¶ 22. Furthermore, they allege that each of them "made at least one specific request for reasonable accommodation of his/her disability and special needs during or as a result of the aforementioned elevator outage. These requests included requests for expedited repair of the elevator, advance notice of scheduled elevator maintenance or other construction work that would take the elevator out of service, a commitment to regular and proactive maintenance of the elevator, and suitable accessible alternative accommodation at local hotels during unavoidable elevator outages." *Id.* ¶ 23. Plaintiffs allege Defendant refused to grant their requests for accommodation. *Id.* ¶ 24.

The FAC further alleges that the Property's "public use areas are not accessible and usable

2

1 by disabled/handicapped persons" and its dwelling units "do not contain the features of accessible design required under the Fair Housing Amendments Act of 1988". *Id*. ¶ 13 (public access and courtyard access doors have thresholds that exceed 1/4 inch unbeveled and require excessive opening force; courtyard door is too narrow to allow a wheelchair user access to the courtyard; unsafe changes in level exceeding 1/2 inch), ¶ 15 (among other things, light switches, electrical outlets, and thermostats not located in accessible locations; kitchens and bathrooms not adaptable and usable by wheelchair users).

The FAC asserts two federal claims for violations of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794; and the Federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq. FAC ¶¶ 25-36. Plaintiffs also assert related state law claims under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12926 et seq.; the California Disabled Persons Act ("CDPA"), Cal. Civ. Code § 54.1; and the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51; as well as a claim under the Berkeley Municipal Code § 19.50.010 et seq. *Id.* ¶¶ 37-62. They seek injunctive relief and damages. *Id.*, Prayer.

## LEGAL STANDARD

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

3

1    cause of action will not do. Factual allegations must be enough to raise a right to relief above the
2    speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**DISCUSSION**

**A.     Failure to Accommodate**

The Court previously dismissed Plaintiffs' FHA claim because they had failed to allege they had requested specific reasonable accommodations. *See* Order at 7-8, Dkt. No. 23. In amending their complaint, Plaintiffs include Paragraph 23, which alleges Plaintiffs requested accommodations and that Defendant refused to provide such accommodations. *See* FAC ¶¶ 23, 24. The FAC, however, does not identify with any specificity which Plaintiff requested what accommodation, or when. *See* Mot. at 5-8. Defendant argues this warrants dismissal of Plaintiffs' Rehabilitation Act, FHA, and state law claims.

In order to prevail on their failure to accommodate claims, Plaintiffs bear the burden of showing (1) they had disabilities that Defendant knew or should have known about, (2) Plaintiffs actually requested an accommodation, (3) the accommodation was reasonable, and (4) Defendant

4

refused. *See Huynh v. Harasz*, 2016 WL 2757219, at *11-13 (N.D. Cal. May 12, 2016) (summarizing elements of failure to accommodate claims brought under numerous federal and state theories, and summarizing that plaintiffs must establish the aforementioned elements for each theory); *see also id.* at *12 ("[C]ourts have generally held that this reasonable accommodation requirement should be interpreted consistently across state and federal antidiscrimination laws."). Whether a particular accommodation is reasonable requires a "fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards." *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002). In relevant part, Plaintiffs need to show that the requested accommodations would have directly remediated the effects of their disabilities, and that the requested accommodation was reasonable in that it "impose[d] no fundamental alteration in the nature of the program or undue financial or administrative burdens." *Id.* at 1155-57.

Plaintiffs are correct that the ultimate determination of these issues involve questions of fact that this Court cannot resolve on a motion to dismiss (Opp'n at 11-12); however, this does not excuse Plaintiffs from pleading these elements of their claims with some specificity. The FAC does not give Defendant notice of the basis for each Plaintiff's claims because it does not identify which Plaintiff requested what allegedly reasonable accommodation. The FAC instead generally alleges "[e]ach Plaintiff" made "at least one specific request for reasonable accommodation" during the time the elevator was non-operational in November 2015 and thereafter, and lists barely-more-than-formulaic examples of the requests. *See* FAC ¶ 23 (Plaintiffs requested "expedited repair"; "advance notice"; "a commitment"; "suitable accessible alternative accommodation"); *id.* ¶ 24 (implying Defendant refused all Plaintiffs' request for alternative accommodation). The FAC does not allege Plaintiffs requested any accommodations regarding the other accessibility problems they identify. At a minimum, in order to state a failure to accommodate claim with "facial plausibility," *each* Plaintiff must allege the reasonable accommodation(s) he or she requested, and that Defendant refused the accommodation(s). *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556. As pleaded, the FAC does not state a plausible claim for each individual Plaintiff; the Court accordingly DISMISSES Plaintiffs' claims under the

Rehabilitation Act, FHA, FEHA, CDPA, and Unruh Act to the extent those claims are based on Defendant's alleged failure to accommodate.

Plaintiffs may amend their Rehabilitation Act, FHA, FEHA and CDPA claims to identify what reasonable accommodation(s) each of them requested, and allege with specificity that Defendant refused to accommodate each such request. Plaintiffs may not amend their Unruh Act claim to attempt to restate a failure to accommodate claim, as this is not an available basis for relief under the Unruh Act. *See Rodriguez v. Morgan*, 2012 WL 253867, at \*4 (C.D. Cal. Jan. 26, 2012).

### B. Associational Standing for Payne

Defendant moves to dismiss Payne's Rehabilitation Act, CDPA, FHA, FEHA and Unruh Act claims on the ground that Payne is not disabled, and that her allegations arise solely on a theory of associational standing. *See* Mot. at 4-5.[1] To establish her standing to pursue these federal and state claims, Payne alleges that

> [a]s a result of the elevator outages, as the wife of a disabled person (Bednarska) she had to keep going back and forth between [her] apartment and the temporary accommodations to get clothes, personal items, do laundry, talk to neighbors who were affected and also collect their mail and packages. It was physically difficult for her to have to climb the 5 flights of stairs due to knee pain. As the days wore on, she remembers she started to feel hopeless and depressed about the situation.

FAC ¶ 22(c).

In order to establish associational standing under the Rehabilitation Act, FHA, FEHA and Unruh Act, a plaintiff must allege she was personally injured as a result of her association with a disabled person. *See McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1144 (11th Cir. 2014) ("[T]he statutory context of the [Rehabilitation Act] indicates that a party is 'aggrieved' within the meaning of [the Rehabilitation Act] only if she is personally excluded, denied benefits, or discriminated against because of her association with a disabled person.");

---

[1] Plaintiff's' argument that Defendant moves to dismiss only Payne's CDPA claim on this ground (Opp'n at 6) is erroneous. *See* Mot. at 5 ("The Court should dismiss all of Payne's disability related claims with prejudice.").

6

*Glass v. Hillsboro Sch. Dist.*, 142 F. Supp. 2d 1286, 1292 (D. Or. 2001) (to plead associational standing under Rehabilitation Act, non-disabled parents must allege "separate, direct injury" incurred "as a result" of their association with disabled children); *Lee v. Retail Store Emp.Building Corp.*, 2017 WL 346021, at *8-9 (N.D. Cal. Jan. 24, 2017) (plaintiff who was a live-in attendant for his relative had standing to sue under FHA and FEHA where he alleged he was evicted when landlord unlawfully evicted his relative for discriminatory reasons: "if Maria was evicted for a discriminatory reason, Wen was also evicted and was thereby injured by the same discriminatory housing practice"); *Kotev v. First Colony Life Ins. Co.*, 927 F. Supp. 1316, 1320 (C.D. Cal. 1996) (plaintiff stated a claim under Unruh Act where he alleged he was denied insurance based solely on his association with a person with disability).

Construing the facts in the light most favorable to Payne, the FAC adequately alleges Payne suffered a separate and distinct injury because of her association with Bednarska. To prevail on her associational standing theory, Payne must allege a "separate and distinct denial of services to [her], apart from [her] role as [spouse] of" a disabled person. *Glass*, 142 F. Supp. 2d at 1292. In *Glass*, the court analogized that a non-disabled person suffers direct harm because of association with a disabled individual if the disabled individual is excluded from a theatre because the theatre lacks room in for wheelchairs; this prevents the non-disabled person of her own independent right to attend the theatre with her disabled companion. *Id.* at 1291-92. The FAC alleges that Bednarska cannot use stairs because of her disability and had to relocate to a hotel when the elevator was out of commission; that Payne, as Bednarska's wife, traveled between their dwelling and the hotel in order to get clothes and personal items, and to do laundry; and that as a result, Payne experienced physical difficulty, pain, and emotional anguish. FAC ¶¶ 22(b)-(c). While the FAC does not explicitly state that Payne also moved to the temporary accommodations to be with her disabled wife, that is how the Court reads the FAC in the light most favorable to Payne. These allegations are sufficient to establish Payne's standing to pursue her disability-related claims under the Rehabilitation Act, FHA, FEHA, and Unruh Act. *See Glass*, 142 F. Supp. 2d at 1292; *Daubert v. City of Lindsay*, 37 F. Supp. 3d 1168, 1176 (E.D. Cal. 2014) (great-grandfather who alleged inaccessible park features encumbered his ability to push his great-

7

1  granddaughter's wheelchair, making him feel anxious and embarrassed, showed "a concrete and
2  particular injury separate and distinct from his great-granddaughter's" and satisfied Article III
3  standing requirements); *Lee*, 2017 WL 34602, at *8-9.

However, the CDPA does not permit non-disabled persons to recover damages for discrimination. *See Daubert*, 37 F. Supp. 3d at 1178-79 (citing *Arnold v. United Artists Theatre Circuit, Inc*., 158 F.R.D. 439, 457-58 (N.D. Cal. 1994) and other cases). Payne argues that she seeks only injunctive relief, not damages. *See* Opp'n at 7 (arguing CDPA, Cal. Civ. Code §§ 54.1 & 55, authorizes any person aggrieved by discrimination to obtain injunctive relief). But the FAC contradicts her argument, as *all* Plaintiffs request "statutory damages, actual damages, punitive and exemplary damages" (FAC ¶ 45) but not injunctive relief under the CDPA.

For these reasons, the Court DISMISSES Payne's CDPA claim, with leave to amend to add a request for injunctive relief. The Motion is denied as to Payne's remaining federal and state claims. The Court addresses Payne's Berkeley Municipal Code claim below.

### C. State Law & Municipal Code Claims

#### 1. Unruh Civil Rights Act

"To prevail on [a] disability discrimination claim under [§51(b) of] the Unruh Civil Rights Act, [a] plaintiff must establish that (1) he was denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) his disability was a motivating factor for this denial; (3) defendants denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services; and (4) defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss or harm." *Moore v. Corizon Health Servs.*, 2017 WL 396170, at *3 (N.D. Cal. Jan. 30, 2017) (internal quotation marks and citations omitted); *see also Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 667-72 (2009) (a plaintiff seeking to establish an Unruh claim that is not premised on an ADA violation "must plead and prove intentional discrimination.").

Plaintiffs originally based their Unruh Act claim in part on a violation of the Americans with Disability Act ("ADA"). *See* Compl. ¶ 50(c) ("Violation of the ADA, a violation of which is a violation of [Section 51(f) of] the Unruh Act."). The Court dismissed the claim to the extent it

8

relied on the alleged ADA violation or failure to accommodate. Order at 8-10. Plaintiffs abandon their ADA claim in the FAC, and now instead allege Defendant violated Section 51(b) of the Unruh Act claim by failing and refusing to (1) modify policies and procedures; (2) construct and/or alter the Property to comply with state building code and architectural requirements; (3) maintain accessible features, including the elevator; (4) maintain an accessible means of egress from tenant apartments; and (5) provide accessible entrance and route to and through all apartments. *See* FAC ¶¶ 49, 51. Defendant once more moves to dismiss Plaintiff's Unruh Act claim on the ground that the Unruh Act does not apply to residential housing complexes. *See* Mot. at 12. Plaintiffs argue the Court's reasoning in dismissing the original Unruh Act claim is no longer applicable now that they no longer premise the claim on a violation of the ADA. *See* Opp'n at 16-19.

In *Coronado v. Cobblestone Village Community Rentals*, 163 Cal. App. 4th 831, 840-41 (2008), *overruled on other grounds*, *Munson*, 46 Cal. 4th at 678, the wheelchair-bound plaintiff alleged the owners of his apartment complex violated the Unruh Act by failing to provide an access ramp that would allow the plaintiff to get down from the curb into the parking area. *Id*. at 838. The plaintiff asserted defendants had promised to install a concrete wheelchair ramp and that he had offered to pay for the ramp, but defendants never installed the ramp. One day, while trying to navigate the curb, the plaintiff's wheelchair tipped over and injured both him and his wife. *Id*. at 837. The plaintiff contended "that the existence of the particular structural barrier (i.e., lack of a curb ramp) on the pathway outside the apartment denied his right to full and equal access to public accommodation." *Id*. at 840. The trial court sua sponte refused to send the Unruh Act claim to the jury because, although the partnership that owned the complex was a business, and the partnership's office in the complex was a public accommodation, the private apartments and the area where the plaintiff was injured were not public accommodations within the meaning of Unruh. *Id*. at 838 (the fact that leasing office was a public accommodation "did not convert the entirety of the apartment complex—including residential areas—into public accommodation for purposes of the relevant statutes"). The California Court of Appeal found that the Unruh Act "is fully applicable to defendants' apartment complex business" in general, and proceeded to evaluate

9

whether the plaintiff could establish Section 51 had been violated based on the evidence presented at trial. *See id*. at 841 (quoting *Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d 721, 731 (1982)). The plaintiff argued the defendants had violated Section 51 because California Government Code section 4450, California Health and Safety Code section 19955, and the ADA required the defendants to install the wheelchair ramp as a modification. *Id*. at 841.[2] The California Court of Appeal thus analyzed whether these statutes imposed such a duty on the owner of the apartment complex, and concluded they did not, because each statute applied only to places of public accommodation. *See id*. at 845-50.[3] The Court of Appeal did not hold the Unruh Act was inapplicable to residential apartment complexes; rather, it held that the "other provisions of law" the plaintiff relied upon to establish the defendants had violated Section 51(b) did not apply to that residential apartment complex because it was not a place of public accommodation as defined by those statutes. *See id.* at 851 ("[A] plaintiff seeking to establish a cause of action under the Unruh Civil Rights Act or the Disabled Persons Act based solely on the existence of a structural barrier must be able to show that the failure to remove the barrier constituted a violation of a structural

---

[2] The Unruh Act does not contain a provision mandating reasonable accommodation; on the contrary, it species that "[n]othing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair, or modification that is otherwise required by other provisions of law. . ." Cal. Civ. Code § 51(d). Thus, the *Coronado* court "emphasize[d] that plaintiff's cause of action under section 51 premised on the existence of a structural barrier depends on whether the lack of a wheelchair ramp at the subject curb constituted an intentional violation of one of these other provisions of law relating to disability access." 163 Cal. App. 4th at 841.

[3] None of the other authorities cited by Defendant actually hold that the Unruh Act does not apply to residential apartment complexes. *See Carolyn v. Orange Park Cmty. Assoc*., 177 Cal. App. 4th 1090, 1098 (2009) ("As [plaintiff] has not argued otherwise, we assume, without deciding, that his Unruh Civil Rights Act claim can only proceed if the trails are deemed a public accommodation"); *Holland v. The Related Cos*., 2016 WL 3669999, at *3 (N.D. Cal. July 11, 2016) (acknowledging defendant's argument that Unruh Act does not apply to requests for reasonable accommodation in residential apartment complexes but not deciding issue; analyzing instead whether plaintiffs stated an Unruh Act claim based on ADA violation: "because [p]laintiffs sought a reasonable accommodation in connection with areas that are indisputably within the residential portions of [the complex], they cannot show a violation [of] the ADA and, thus, cannot premise their Unruh Act [claim] on that alleged violation."). At least one court in the Central District has squarely held that it does not. *See Rodriguez v. Morgan*, 2012 WL 253867, at *4 (C.D. Cal. Jan. 26, 2012) (applying ADA definition of "public accommodation" to Unruh Act and on that basis finding "that the Unruh Act does not require a landlord to engage in reasonable accommodation of a disabled tenant as to residential housing."). In its prior Order, this Court did not decide whether the Unruh Act did or did not apply to residential buildings; it noted that none of the authorities Plaintiffs cited supported their argument the Unruh Act applied to residential areas. *See* Order at 9-10.

access standard set forth in other provisions of law. In the instant case, none of the statutes that were referred to by plaintiff as the source of such structural access standards was applicable to the residential and common areas of the apartment complex."). Absent binding authority to the contrary, the Court finds the *Coronado* court's reasoning persuasive and follows it here.

To plead their Unruh Act claim, Plaintiffs also rely on the violations of other code provisions. *See* FAC ¶ 49 (relying on California Building Code provisions as well as other, unspecified provisions). Some of the violations Plaintiffs list in their attempt to state an Unruh Act claim are conclusory and do not state a claim. *See* FAC ¶ 49(a)-(b). But with respect to the specific California Building Code provisions they allege, Plaintiffs do state a claim. *See id*. ¶ 49(c)-(e). Each of these provisions pertains to elevator access as the sole means of egress of the Property from their dwelling units. Defendant does not argue that the specific provisions Plaintiffs identify do not apply to residential apartment complexes. *See* Mot. Defendant does not analyze whether the Building Code provisions identified by Plaintiffs support the Section 51(b) claim (*see* Mot. at 12; Reply at 7-8), and the Court therefore cannot find Plaintiffs fail to state an Unruh Act claim on this ground. The Motion to Dismiss the Unruh Act claim is DENIED to the extent the claim is premised on specific violations of the Building Code pertaining to elevator access and egress from the Property; it is GRANTED to the extent the claim is premised on failure to accommodate or unspecified "failure and refusal to construct and/or alter the Property's facilities in compliance with state building code and state architectural requirements" (FAC ¶ 49(b)).

2. FEHA & CDPA

In dismissing FEHA and CDPA claims as pleaded in the original complaint, the Court held:

> To plead their FEHA claim, Plaintiffs incorporate all prior allegations in the Complaint and allege "[b]ased upon the foregoing, Defendants have violated the protections afforded to Plaintiffs under California Government Code § 12955." Compl. ¶¶ 40-41[, Dkt. No. 1]. Similarly, Plaintiffs plead their CDPA claim by reincorporating the prior allegations of the Complaint and alleging that "[b]ased upon the foregoing, Defendant has violated the protections afforded to Plaintiffs under California Civil Code 54 *et seq*." Compl. ¶¶ 43-44. Plaintiffs do not allege facts establishing each element of these claims, such as what protections of FEHA or CDPA they allege were breached by Defendant's conduct, or how Defendant's conduct

11

violated those protections as to each Plaintiff.

Order at 9.

In the FAC, Plaintiffs adequately and specifically identify Defendant's alleged violations of state and federal laws. To the extent these violations pertain to providing a functioning elevator when that is the sole handicapped-accessible means of ingress and egress from the Property, Plaintiffs have also adequately pleaded how Defendant's conduct violated each Plaintiff's rights. However, to the extent Plaintiffs attempt to allege claims based on other violations, the FAC does not identify how Defendant violated those protections *as to each Plaintiff*. *See, e.g.*, FAC ¶¶ 38, 43 (identifying alleged violations, but failing to allege how each Plaintiff's rights were violated). For example, the FAC does not allege that each Plaintiff encountered the alleged barriers, was discouraged from attempting to use an area of the Property as a result of the barriers, or was actually harmed by the barrier. *Cf.* FAC ¶¶ 39, 44 (conclusorily asserting Plaintiffs have suffered actual damage as a result of violations, but now explaining how each Plaintiff in fact was injured). In their Opposition, Plaintiffs explain how some of these violations may affect disabled persons in general, but they still fail to specifically allege that the violations in fact affected each Plaintiff. *See, e.g.*, Opp'n at 15 (inaccessible doors problematic for persons in wheelchair; Defendant fails to maintain such accessible features).

Defendant argues the CDPA only permits Plaintiffs to pursue an accessibility claim against places of public accommodations. Mot. at 11. The Court rejects that argument for the same reasons it rejects Defendant's argument Plaintiffs cannot, as a matter of law, state an Unruh Act violation based on a barrier to access in a residential apartment complex. *See Coronado*, 163 Cal. App. 4th at 845 (concluding that to state an CDPA claim based on structural or architectural barrier, "the existence of the barrier must violate a separate provision of law relating to structural access standards," and that the separate provisions of law were not implicated because the apartment complex was not a place of public accommodation).

In addition to granting the Motion to Dismiss with respect to the reasonable accommodation claims, the Court also GRANTS the Motion to Dismiss the FEHA and CDPA claims to the extent they are not based on elevator access.

12

### 3. Berkeley Municipal Code

Plaintiffs allege Defendant violated the Berkeley Municipal Code by failing to (1) regularly maintain the elevator, (2) repair the elevator at the earliest practicable time, failing to anticipate and avoid unnecessary delays in making repairs, (3) provide advance notice of elevator outages, and (4) compensate tenants who suffer substantially restricted access. FAC ¶ 60. The Berkeley Municipal Code requires building operators to give notice of outages; to maintain and repair elevators; and to provide notice of regular maintenance and unanticipated repair. Berkeley, Cal. Mun. Code §§ 19.50.030-050 (2017). Plaintiffs do not state a claim under the Municipal Code, as this Code section applies only to "buildings of two or more stories in height *in which ten or more units are rented or offered for rent* and which contain an elevator." *Id*. § 19.50.020 (emphasis added). The FAC alleges the Property consists of five stories, but does not allege it contains ten or more units. *See* FAC ¶ 3 (the Property consists of "at least five dwelling units").

In addition, Plaintiffs only conclusorily list Defendant's violations of the Berkeley Municipal Code. *See* FAC ¶ 60. The mere recitation of the titles of the Code sections does not state a claim. While building operators must "expeditiously" repair elevator malfunctions (i.e., "at the earliest practicable time, not to exceed twenty-four hours of notice" of the malfunction), the Code recognizes that some delays are beyond the operator's control. Berkeley, Cal. Mun. Code § 19.50.040. If such circumstances prevent a building operator from repairing an elevator malfunction, the

> building operator shall locate and provide alternative housing for any person residing in the building who needs to use the elevator to gain access to or egress from his or her unit because of such person's impaired ability to climb stairs as a result of such person's physical disability, medical condition, infirmity, illness or other similar circumstance. Such alternative housing shall be decent, safe, sanitary and provided at the building operator's expense, however, the cost to the building operator for providing such alternative housing shall not exceed one hundred eighty dollars per day or a total cost of one thousand eight hundred dollars. Access to or egress from such alternative housing shall not necessitate the tenant's use of stairs[.]

*Id*. Payne, Moore, Estes, and Hara also do not state a claim for violation of Section 19.50.060 because they do not allege facts sufficient to show that the repairs were untimely under Section

13

19.50.040, or that Defendant failed to provide alternative housing during this period. *See* FAC ¶ 22. Only Bednarska alleges Defendant failed to provide her adequate—i.e., accessible—housing during the period when the elevator was out of service, and failed to pay for the temporary accommodations. FAC ¶ 22(b). Moreover, it does not appear that Payne can state a claim under this Code section, as *her* access or egress from the building was not substantially restricted. *See* Berkeley, Cal. Mun. Code § 19.50.060(A) ("Where the failure to timely repair an elevator or to provide alternative housing . . . results in any person residing in the building having substantially restricted access to or egress from his or her unit because of such person's impaired ability to climb stairs as a result of physical disability, medical condition, . . . or other similar circumstance, the person whose access to or egress from such building has been substantially restricted may bring a civil action[.]"); *see also* Reply at 10 n.3. Finally, all Plaintiffs seek statutory damages of "at least $250 per day" the elevator was unavailable (FAC ¶ 61), but the Code only provides for maximum statutory damages of $200 per day. *See* Berkeley, Cal. Mun. Code § 19.50.060(A)(3). Their general request for injunctive relief (*see* FAC, Prayer), also exceeds the relief available under the Municipal Code. *See id.* Accordingly, Defendant's Motion to Dismiss the Municipal Code claim is GRANTED with leave to amend.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's Motion to Dismiss as follows:

(1) All claims to the extent they are based on Defendant's failure to accommodate.

(2) The FEHA and CDPA claims, to the extent they are based on claims other than elevator access.

(3) The Unruh Act claim to the extent it is based on FAC ¶ 49(a) or (b).

(4) The Berkeley Municipal Code claim.

With the exception of Payne's CDPA claim for damages, these claims are dismissed WITH LEAVE TO AMEND.

14

Plaintiffs shall file any amended complaint no later than July 12, 2017.

**IT IS SO ORDERED.**

Dated: June 21, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge